DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, New York 10017

Telephone:  (212) 450-4000

Facsimile:  (212) 607-7973

Marshall S. Huebner (admitted *pro hac vice*)

Brian M. Resnick (admitted *pro hac vice*)

Michelle M. McGreal (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP

Riverfront Plaza, East Tower

951 East Byrd Street

Richmond, Virginia 23219

Telephone: (804) 788-8200

Facsimile: (804) 788-8218

Tyler P. Brown (VSB No. 28072)

Henry P. (Toby) Long, III (VSB No. 75134)

Justin F. Paget (VSB No. 77949)

*Counsel to the Debtors
and Debtors in Possession*

*Local Counsel to the Debtors
and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

In re:

**JAMES RIVER COAL COMPANY,** *et al.*,

**Debtors.**[1]

**Chapter 11**

**Case No. 14-31848 (KRH)**

**(Jointly Administered)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A PLAN AND SOLICIT VOTES THEREON

James River Coal Company and its subsidiaries, as debtors and debtors in

possession in these proceedings (collectively, the "**Debtors**"), respectfully represent:

### Background and Jurisdiction

1.     On April 7, 2014 (the "**Petition Date**"), each Debtor commenced with this

Court a voluntary case under chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**").  The Debtors are authorized to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are listed on Schedule 1 attached hereto.

the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to Rule

1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2.     This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and

may be determined by this Court.  Venue is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

3.     By this motion (this **"Motion"**), the Debtors seek an order, substantially in

the form attached hereto as <u>Exhibit A</u>, pursuant to section 1121(d) of the Bankruptcy

Code, extending by 100 days (i) the exclusive period for the Debtors to file a chapter 11

plan (the "**Exclusive Filing Period**") from August 5, 2014 through and including

November 13, 2014, and (ii) the exclusive period for the Debtors to solicit acceptances

thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing

Period, the "**Debtors' Exclusive Periods**") from October 4, 2014 through and including

January 12, 2015.  The Debtors seek these extensions to avoid the necessity of having to

formulate a plan prematurely, and, furthermore, to ensure that their plan is appropriately

tailored to the outcome of their ongoing strategic restructuring transaction process and

best addresses the interests of the Debtors and their employees, creditors and estates.

**The Debtors' Restructuring Efforts**

4.     The Debtors are coal mining companies with operations located

throughout eastern Kentucky, southern West Virginia and southern Indiana that mine,

prepare and sell metallurgical, thermal and specialty coal.  The Debtors employ more

than 1,000 people and operate six active mining complexes.

2

5.       The Debtors initiated these chapter 11 cases to pursue and effectuate one or more strategic restructuring transactions.  On May 9, 2014, this Court entered the *Order (i) Approving the Strategic Transaction Bidding Procedures, (ii) Scheduling Bid Deadlines and the Auction, (iii) Approving the Form and Manner of Notice Thereof and (iv) Granting Related Relief* [ECF No. 254] (the "**Strategic Transaction Bidding Procedures Order**"), which established a timeline with respect to soliciting bids for the sale of all or substantially all of the Debtors' assets or the sponsorship of a plan of reorganization.  Pursuant to the Strategic Transaction Bidding Procedures (as defined in the Strategic Transaction Bidding Procedures Order):

- Preliminary Indications of Interest (as defined in the Strategic Transaction Bidding Procedures) were due on **May 22, 2014**;

- The deadline for submitting Bids (as defined in the Strategic Transaction Bidding Procedures) is **June 30, 2014**;

- The Auction (as defined in the Strategic Transaction Bidding Procedures) is currently scheduled to be held on **July 8, 2014**; and

- In the event the Successful Bid (as defined in the Strategic Transaction Bidding Procedures) contemplates a sale, the date for the Sale Hearing (as defined in the Strategic Transaction Bidding Procedures) is currently scheduled to be held on **July 10, 2014**.

6.       In connection with the Strategic Transaction Bidding Procedures, the Debtors, with the assistance of their restructuring professionals, have actively and publicly engaged in a marketing process for (i) the sale of all or any part of the Debtors' businesses or (ii) a contribution of capital in connection with a stand-alone plan of reorganization.  Thus far, the Debtors have received various Preliminary Indications of Interest from potential strategic and financial bidders and are continuing to make progress towards their goal of consummating a value-maximizing restructuring transaction in the near-term.  At this early stage in their chapter 11 cases, the Debtors have already laid the

3

groundwork for an effective dual-track process, pursuant to which the Debtors will either consummate a sale or stand-alone plan.

7.      The Sale Hearing is currently scheduled to occur on July 10, 2014, at the same omnibus hearing at which this Motion is currently scheduled to be heard.  The result of the Sale Hearing and this Motion are intricately related in that an extension of the Debtors' Exclusive Periods will maximize the Debtors' flexibility to appropriately tailor an eventual plan to whatever Successful Bid emerges from the strategic restructuring transaction process.  Therefore, preserving the Debtors' exclusive ability to file a plan is critically important given that the plan could take a variety of possible forms – including a plan of reorganization to implement a transaction with one or more plan sponsors or a plan of liquidation to distribute the proceeds from a sale or multiple sales of the Debtors' assets.  Thus, the Debtors will not be in a position to file a plan until the outcome of the strategic restructuring transaction process is determined.

8.      In addition to the substantial effort required to oversee the strategic restructuring transaction process and operate their businesses, since the Petition Date, the Debtors have worked diligently to stabilize their businesses and reassure customers, suppliers and employees.  In the approximately two and a half months since the Petition Date, the Debtors and their advisors have also dedicated significant time and resources to, among other things, (a) obtaining interim and final approval of an $110 million debtor-in-possession credit facility on appropriate terms, permitting the financing of the Debtors' operations during these chapter 11 cases; (b) obtaining approval of various critical "first day" and "second day" relief; (c) obtaining approval of the Strategic Transaction Bidding Procedures to govern the strategic restructuring transaction process; (d) engaging with

potential bidders to discuss potential strategic restructuring transactions; (e) obtaining

approval of two section 363 sales of a portion of the Debtors' non-core assets;

(f) obtaining approval of key employee incentive and retention plans over a filed

objection; (g) beginning the process of analyzing thousands of leases and executory

contracts to identify those that are beneficial to the Debtors' estates and seeking to reject

those that are not; (h) preparing and filing the Debtors' schedules of assets and liabilities

and statements of financial affairs; (i) participating in the section 341 meeting of creditors

and (j) addressing a multitude of creditor, supplier and customer inquiries.

9.      Tangible progress has been made toward the Debtors' goal of maintaining

their operations while simultaneously pursuing a strategic restructuring transaction.

However, there is more that needs to be done in order to ensure that the strategic

restructuring transaction process results in a successful transaction to the benefit of the

Debtors, their estates and other stakeholders.  The Debtors remain hopeful that following

the completion of the strategic transaction restructuring process, the Debtors will have

greater clarity regarding whether a plan of reorganization or plan of liquidation is best

suited for these chapter 11 cases.

10.     Importantly, the Debtors have been engaged with the official committee of

unsecured creditors (the "**Creditors' Committee**") since its appointment on all of the

material issues that have arisen in these cases and have delivered formal and informal

presentations to the Creditors' Committee's advisors.  The Creditors' Committee and its

advisors have been given access to the Debtors' financial advisors and officers, and to

substantial information, in order to help the Creditors' Committee evaluate the Debtors'

businesses and plans.

11.     The Debtors' goal is, of course, to develop, propose and ultimately effectuate a chapter 11 plan – either in the form of a plan of reorganization or a plan of liquidation, depending on the outcome of the strategic restructuring transaction process – that will receive support from their various constituencies.  Additional work and progress is necessary in connection with the development of such a plan.  Indeed, the outcome of the Debtors' strategic restructuring transaction process will largely determine the direction of the Debtors' businesses and the manner in which the Debtors will restructure under chapter 11.  In the event that the outcome of the Auction is a sale of all or substantially all of the Debtors' assets, the Debtors and their professional advisors will need time not only to prepare for and successfully close the sale transaction, but also to formulate a plan that will efficiently and equitably distribute the proceeds of such a sale. On the other hand, in the event that the Auction and Sale Hearing result in a stand-alone plan of reorganization, the Debtors, along with the plan sponsor(s), will need adequate time to negotiate the terms of the final plan and attendant disclosure statement.  Under either scenario, it is crucial that the Debtors, their advisors and all other parties in interest be given sufficient time to analyze the results of the Auction and determine its effect on the Debtors' plan.

12.     The extensions requested herein will advance the Debtors' efforts to maximize value for the Debtors' creditors and increase the prospects of an orderly conclusion of these chapter 11 cases.  Specifically, an extension of the Debtors' Exclusive Periods is required to enable the Debtors to:

(a)     proceed with the strategic restructuring transaction process in order to consummate a value-maximizing restructuring transaction;

(b)       continue to stabilize their operations and maintain their customer,

supplier, employee and other business relationships;

(c)       further implement specific restructuring initiatives; and

(d)       develop a plan reflecting the initiatives set forth above and

numerous others that are underway.

13.       Moreover, the extension requested herein aligns the Debtors' plan filing

and solicitation process with the maturity date of the Debtors' DIP financing facility,

which is January 12, 2015.

## Basis for Relief

14.       Section 1121(b) of the Bankruptcy Code provides for an initial period of

120 days after the date of the order for relief during which the debtor has the exclusive

right to file a plan.  Section 1121(c) of the Bankruptcy Code provides that if the debtor

files a plan within the 120-day exclusivity period, competing plans may not be filed

before 180 days after the date of the order for relief to allow the debtor to solicit and

obtain acceptances.  In these cases, the Exclusive Filing Period expires on August 5,

2014, and the Exclusive Solicitation Period expires on October 4, 2014.

15.       Pursuant to section 1121(d)(1) of the Bankruptcy Code, this Court may

extend a debtor's exclusive periods upon a demonstration of cause:

> Subject to paragraph (2),[2] on request of a party in interest
> made within the respective periods specified in subsections
> (b) and (c) of this section and after notice and a hearing, the
> court may for cause reduce or increase the 120-day period
> or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

---

[2] Paragraph (2) states that the exclusive periods may not be extended beyond 18 and 20 months
after the petition date.

16.     The exclusive periods provided by Congress were incorporated in the

Bankruptcy Code to afford a debtor a full and fair opportunity to propose a consensual

plan and solicit acceptances of such plan without the deterioration and disruption of the

debtor's business that might be caused by the filing of competing plans by non-debtor

parties.  Moreover, the Debtors are the only parties that have fiduciary duties to the entire

enterprise, and they are the only parties that are duty-bound to formulate a plan that takes

into account the interests of the estate and all its constituents.  *See Smart World Techs.,*

*LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 174 (2d

Cir. 2005) (Congress vested administration of the chapter 11 estate solely in the hands of

the debtor-in-possession).  To allow the Debtors' Exclusive Periods to lapse would defeat

the very purpose of section 1121 of the Bankruptcy Code.

17.     The principal goal of chapter 11 is the successful restructuring of debtors

in order to increase the pool of assets available to creditors.  *See NLRB v. Bildisco &*

*Bildisco*, 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 462 U.S. 198,

203 (1983).  The Congressional intent woven throughout chapter 11 is that the principal

means of a successful restructuring should be a considered and consensual plan.  *See*

*Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987).  To promote the

formulation of a considered and consensual plan, Congress gave the debtor the exclusive

right to propose a plan for a specified and extendable period.  *See In re Ames Dep't*

*Stores Inc.*, No. 90-11233, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The

purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to

negotiate with its creditors.").

8

18.    Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a plan is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case.  *See In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).  Congress intended to give the bankruptcy court maximum flexibility to make such determination.  *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (citation omitted); *see also* H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191.  While the term "cause" is not defined by the statute, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement."  *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 95-595, at 231 (1978)); *see also In re Borders Grp., Inc.* 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity.").

19.    In determining whether cause exists to extend a debtor's exclusive periods, courts have considered numerous factors, including:

(a)    the size and complexity of the case;

(b)    the need for more time to allow the debtor to negotiate a consensual plan and prepare adequate information;

(c)    whether the debtor has made good faith progress toward reorganization;

(d)    whether the debtor has been paying its debts when due;

(e)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

     (f)     whether the debtor has made progress in negotiating with creditors;

     (g)     the length of time the case has been pending;

     (h)     whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's demands; and

     (i)     whether unresolved contingencies that may affect the viability of a plan exist.

See In re Tripodi, Case No. 04-30793, 2005 Bankr. LEXIS 1981, at *4 (Bankr. D. Conn. Feb. 18, 2005);  In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y 2006); In re Lionel L.L.C., Case No. 04-17324, 2007 Bankr. LEXIS 2652, at *18 (Bankr. S.D.N.Y. Aug 3, 2007).  Not all factors are relevant to every case, and courts have used a subset of the above factors to determine whether cause exists.  See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.), 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003). When determining whether cause exists, courts assess the totality of the circumstances. See In re McLean, 87 B.R. at 834.

## Ample Cause Exists to Extend the Debtors' Exclusive Periods

20.     An analysis of the various factors noted above demonstrates that sufficient cause exists for the extension of the Debtors' Exclusive Filing Period and Exclusive Solicitation Period by 100 days to November 13, 2014 and January 12, 2015, respectively.

     *a.*     *The Debtors' Cases Are Large and Complex*

21.     Courts have regularly extended the exclusive periods under section 1121(d) of the Bankruptcy Code in large, complex chapter 11 cases so as to afford the debtor time to stabilize its business and lay the groundwork for an effective plan before beginning the formal plan formulation, negotiation, filing and solicitation

process. *See, e.g.*, *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990)

(stating that "cause" can include an "unusually large case") (citation omitted); *In re

Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and

the consequent difficulty in formulating a plan of reorganization for a huge debtor with a

complex financial structure are important factors which generally constitute cause for

extending the exclusivity periods."); *see also* H.R. Rep No. 95-595, at 231–32 (1978);

*reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to

seek reorganization under Chapter 11, the Court would probably need to extend the time

in order to allow the debtor to reach an agreement.").  Indeed, the size and complexity of

the case, by itself, can support a determination that cause exists for an extension of

exclusivity. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)

(noting that two previous extensions of exclusivity had been granted based on the size

and complexity of the case alone); *In re Texaco*, 76 B.R. at 325–27 (cause existed to

warrant first extension of exclusivity based on the size and complexity of the case alone).

22.     More than 350 motions, notices, applications, petitions, orders and other

pleadings have been filed in just the first two and a half months of these cases.

Addressing these motions, negotiations and a multitude of creditor, supplier and customer

inquiries, and the Debtors' strategic restructuring transaction process, has required

extensive time and resources, and such efforts have been largely successful.  The sheer

number and scope of issues that have arisen in the first few months of these cases

demonstrate their size and complexity and the appropriateness of an extension of the

Debtors' Exclusive Periods.

b.    *The Debtors Need More Time to Negotiate a Consensual Plan and Prepare Adequate Information*

23.    As set forth above in detail, there are numerous matters that must be resolved before the Debtors can hope to formulate and negotiate a successful plan and prepare the accompanying disclosure statement containing adequate information.  Most notably, the Debtors must evaluate the results of the strategic restructuring transaction process in order to determine whether a plan of reorganization or a plan of liquidation will best serve the interests of their estates, their creditors and other relevant constituencies.  If the winning Bid is a sale transaction, the Debtors will be required to close the sale and analyze the optimal means of distributing the proceeds of such a sale to their myriad creditor constituencies.  Alternatively, if the winning Bid is in the form of a sponsorship of a plan of reorganization, the Debtors will need adequate time to negotiate the ultimate terms of the plan with various parties.  Regardless of the results of the strategic restructuring transaction process, more time is needed for the Debtors to formulate a consensual plan.

c.    *The Debtors Have Made Good Faith Progress Toward Reorganization*

24.    The Debtors' demonstrated progress in resolving many issues that have come up since the Petition Date also justifies the requested extension of the Debtors' Exclusive Periods.  *See In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (granting an extension of the debtor's exclusive periods because the debtor was making reasonable efforts to implement its extensive turnaround program).  As discussed above, the Debtors have already taken numerous steps in these proceedings, including with respect to the sale of certain non-core assets, and are continuing their efforts to solicit a value-maximizing strategic restructuring transaction.

12

25.     Moreover, since the appointment of the Creditors' Committee, the Debtors and their advisors have engaged in numerous meetings and discussions with the Creditors' Committee's advisors as well as certain other constituencies.  Discussions with the Creditors' Committee continue to be productive and amicable.

26.     The size and complexity of a bankruptcy case are relevant factors in determining whether a debtor has shown progress in attempting in good faith to formulate a viable plan.  *See Quality Inns Int'l, Inc. v. L.B.H. Assoc. Ltd. P'ship*, Nos. 89-2443 to 89-2445, 1990 WL 116761, at *2 (4th Cir. July 26, 1990).  As discussed above, the Debtors' cases are large and complex.  Taking into account the size and complexity of the Debtors' cases, the Debtors have made significant progress toward proposing a plan.

> d.     *The Debtors Have Been Paying their Postpetition Debts When Due*

27.     The fact that a debtor has sufficient liquidity to pay its postpetition debts as they come due supports the granting of an extension of the Debtors' Exclusive Periods, because it suggests that such an extension will not jeopardize the rights of postpetition creditors and counterparties.  The Debtors have been paying their undisputed postpetition debts as they come due and expect to continue to be able to do so.

> e.     *The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan*

28.     As discussed above, the Debtors have already made progress in stabilizing their businesses and engaging with a number of potential strategic and financial bidders as part of their strategic restructuring transaction process.  An extension of the Debtors' Exclusive Periods will enable the Debtors and various economic stakeholders to formulate a plan that will maximize the value of the Debtors' estates.

*f.        The Debtors Have Made Progress in Negotiating with their Creditors*

29.       Because only a relatively short time has passed since the commencement

of these cases, negotiations with creditors over the provisions of a plan have not yet

begun.  As noted above, however, the Debtors have had successful negotiations with a

wide variety of creditors on various topics and need to await the outcome of the strategic

restructuring transaction process in order to complete their negotiations.

*g.        These Cases Have Been Pending for Only a Few Short Months*

30.       This is the first request for an extension of the Debtors' Exclusive Periods,

and it comes only about two and a half months after the Debtors' chapter 11 filings.

Accordingly, the Debtors are not yet in a position to accurately evaluate the universe of

claims against them and prepare a plan and a disclosure statement containing adequate

information.  Accordingly, an extension of the Debtors' Exclusive Periods is warranted.

*h.        The Debtors' Motive in Requesting the Extensions is Not to Pressure Their
Creditors*

31.       Rather than requesting the extensions of the Debtors' Exclusive Periods as

a negotiation tactic or as a means of maintaining leverage over any group of creditors

whose interests may be harmed by such an extension, the Debtors are requesting the

extensions to give themselves sufficient time to consummate a strategic restructuring

transaction and develop a plan of that maximizes creditor recoveries.  Allowing the

Debtors' Exclusive Periods to terminate at this premature point could jeopardize the

strategic restructuring transaction process and would defeat one of the primary purposes

of section 1121 of the Bankruptcy Code, which is the development of a consensual plan

*See In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005) ("exclusivity

14

is intended to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated") (citation omitted).

32.     The requested extension of the Debtors' Exclusive Periods will increase the likelihood of a greater distribution to creditors than if the Debtors were required to file a plan prematurely, at no unfair cost or prejudice to any of the Debtors' creditors.

       *i.*     *An Extension of the Debtors' Exclusive Periods Will Enable the Debtors to Resolve Certain Contingencies That Will Affect a Plan*

33.     The existence of unresolved contingencies, the resolution of which will affect the debtor's ability to propose a confirmable plan, supports an extension of the exclusive periods.  *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  As this Court and all parties are aware, the Debtors must still address a number of issues on a variety of fronts before they can formulate a plan, including, most significantly, issues relating to the strategic restructuring transaction process.

### The Requested Extensions are Consistent With Those Granted in Other Chapter 11 Cases

34.     This Court and other courts in this district have routinely granted requests by the debtors to extend their periods of exclusivity for an amount of time similar to the extension requested herein.  *See, e.g.*, *In re Free Lance-Star Publ'g Co. of Fredericksburg, Va.*, Case No. 14-30315 (KRH) (Bankr. E.D. Va. May 27, 2014) (initial extension of 75 days for filing a plan and 76 days for soliciting acceptances thereof); *In re AMF Bowling Worldwide Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Feb. 14, 2013) (initial extension of 90 days); *In re Bear Island Paper Co., L.L.C.*, Case No. 10-31202 (DOT) (Bankr. E.D. Va. June 25, 2010) (initial extension of 98 days); *In re Movie Gallery, Inc.*, Case No. 10-30696 (DOT) (Bankr. E.D. Va. May 27, 2010) (initial extension of 59 days); *In re S & K Brands, Inc.*, Case No. 09-30805 (KRH) (Bankr. E.D.

Va. June 5, 2009) (initial extension of 60 days); *In re Canal Corp. f/k/a Chesapeake Corp.*, Case No. 08-36642 (DOT) (Bankr. E.D. Va. Apr. 24, 2009) (initial extension of 90 days); *In re LandAmerica Fin. Grp.*, Case No. 08-35994 (KRH) (Bankr. E.D. Va. Mar. 23, 2009) (initial extension of 120 days); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Mar. 3, 2009) (initial extension of 120 days).

35.    In sum, the Debtors submit that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Debtors' Exclusive Periods.

### Notice

36.    Notice of this Motion has been provided in accordance with the Notice, Case Management and Administrative Procedures approved by this Court on April 10, 2014 [ECF No. 77] (the "**Case Management Procedures**").  The Debtors submit that no other or further notice need be provided.

### No Previous Request

37.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated:   June 26, 2014
              Richmond, Virginia

Respectfully submitted,

/s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

*Local Counsel to the Debtors*
*and Debtors in Possession*

-and-

Marshall S. Huebner (admitted *pro hac vice*)
Brian M. Resnick (admitted *pro hac vice*)
Michelle M. McGreal (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:   (212) 450-4000
Facsimile:   (212) 607-7983

*Counsel to the Debtors*
*and Debtors in Possession*

# SCHEDULE 1

Debtor Entities

1.  James River Coal Company (2012)
2.  BDCC Holding Company, Inc. (3200)
3.  Bell County Coal Corporation (0806)
4.  Bledsoe Coal Corporation (4821)
5.  Bledsoe Coal Leasing Company (6654)
6.  Blue Diamond Coal Company (3812)
7.  Buck Branch Resources LLC (1459)
8.  Chafin Branch Coal Company, LLC (7873)
9.  Eolia Resources, Inc. (0587)
10. Hampden Coal Company, LLC (4334)
11. International Resource Partners LP (8669)
12. International Resources Holdings I LLC (9838)
13. International Resources Holdings II LLC (1567)
14. International Resources, LLC (2522)
15. IRP GP Holdco LLC (5380)
16. IRP Kentucky LLC (1454)
17. IRP LP Holdco Inc. (4447)

18. IRP WV Corp. (6050)
19. James River Coal Sales, Inc. (3417)
20. James River Coal Service Company (2577)
21. James River Escrow Inc. (0314)
22. Jellico Mining, LLC (4545)
23. Johns Creek Coal Company (9412)
24. Johns Creek Elkhorn Coal Corporation (9199)
25. Johns Creek Processing Company (4021)
26. Laurel Mountain Resources LLC (1458)
27. Leeco, Inc. (4176)
28. Logan & Kanawha Coal Co., LLC (5716)
29. McCoy Elkhorn Coal Corporation (8373)
30. Rockhouse Creek Development, LLC (9583)
31. Shamrock Coal Company, Incorporated (1843)
32. Snap Creek Mining, LLC (6858)
33. Triad Mining Inc. (9005)
34. Triad Underground Mining, LLC (9041)

# Exhibit A

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, New York 10017

Telephone:   (212) 450-4000

Facsimile:    (212) 607-7973

Marshall S. Huebner (admitted *pro hac vice*)

Brian M. Resnick (admitted *pro hac vice*)

Michelle M. McGreal (admitted *pro hac vice*)

HUNTON & WILLIAMS LLP

Riverfront Plaza, East Tower

951 East Byrd Street

Richmond, Virginia 23219

Telephone: (804) 788-8200

Facsimile: (804) 788-8218

Tyler P. Brown (VSB No. 28072)

Henry P. (Toby) Long, III (VSB No. 75134)

Justin F. Paget (VSB No. 77949)

*Counsel to the Debtors*
*and Debtors in Possession*

*Local Counsel to the Debtors*
*and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **JAMES RIVER COAL COMPANY**, *et al.*, | Case No. 14-31848 (KRH) |
| | **(Jointly Administered)** |
| **Debtors.** | |

## ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS
## WITHIN WHICH TO FILE A PLAN AND SOLICIT VOTES THEREON

Upon the motion (the "**Motion**")[1] of James River Coal Company and its

subsidiaries that are debtors and debtors in possession in these proceedings (collectively,

the "**Debtors**"), for the entry of an order pursuant to section 1121(d) of the Bankruptcy

Code extending the exclusive periods under sections 1121(b) and (c) of the Bankruptcy

Code within which only the Debtors may file a plan and solicit votes thereon, as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in
the Motion.

of the Motion and the requested relief being a core proceeding under 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with the Case

Management Procedures; and no other or further notice need be provided; and the relief

requested in the Motion being in the best interests of the Debtors, their estates, their

creditors and other parties in interest; and the Court having reviewed the Motion[ and

having held a hearing with appearances of parties in interest noted in the transcript

thereof (the "**Hearing**")]; and the Court having determined that the legal and factual

bases set forth in the Motion [and at the Hearing] establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.       The relief requested in the Motion is granted as set forth herein.

2.       Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Filing

Period is hereby extended through and including November 13, 2014.

3.       Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive

Soliciting Period is hereby extended through and including January 12, 2015.

4.       The relief requested herein is without prejudice to the Debtors' right to

seek additional extensions of the Debtors' Exclusive Periods pursuant to section 1121(d)

of the Bankruptcy Code with respect to one or more of the Debtors.

5.       The Debtors are authorized to take all actions necessary to effectuate the

relief granted pursuant to this Order in accordance with the Motion.

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

7.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

8.      Notwithstanding any Federal Rule of Bankruptcy Procedure that might otherwise delay the effective time of this order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.


Dated: Richmond, Virginia

_____, 2014


                            _____
                            KEVIN R. HUENNEKENS
                            UNITED STATES BANKRUPTCY JUDGE

3

WE ASK FOR THIS:

/s/ Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218

*Local Counsel to the Debtors and Debtors in
Possession*

-and-

Marshall S. Huebner (admitted *pro hac vice*)
Brian M. Resnick (admitted *pro hac vice*)
Michelle M. McGreal (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 607-7973

*Counsel to the Debtors and Debtors in
Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Henry P. (Toby) Long, III

4