IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:    JAMES RIVER COAL COMPANY, et al.,<br><br>                Debtors. | Case No. 14-31848-KRH<br>Chapter 11 |
| MINE SERVICE COMPANY, INC.,<br><br>                Movant,<br>v.<br>JAMES RIVER COAL COMPANY, et al.,<br><br>                Respondents. | Contested Matter |

**MEMORANDUM OPINION**

Before the Court in this contested matter is the Motion for Relief from the Automatic Stay (the "Motion") filed by Mine Service Company, Inc. ("Mine Service") against James River Coal Company and its subsidiaries (the "Debtors").[1] The Court conducted a hearing on the Motion on June 25, 2015 (the "Hearing"). Mine Service seeks relief from the automatic stay

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: James River Coal Co. (2012); BDCC Holding Company, Inc. (3200); Bell County Coal Corp. (0806); Bledsoe Coal Corp. (4821); Bledsoe Coal Leasing Co. (6654); Blue Diamond Coal Co. (3812); Buck Branch Resources LLC (1459); Chafin Branch Coal Co., LLC (7873); Eolia Resources, Inc. (0587); Hampden Coal Co., LLC (4334); Int'l Resource Partners LP (8669); Int'l Resources Holdings I LLC (9838); Int'l Resources Holdings II LLC (1567); Int'l Resources, LLC (2522); IRP GP Holdco LLC (5380); IRP Kentucky LLC (1454); IRP LP Holdco Inc. (4447); IRP WV Corp. (6050); James River Coal Sales, Inc. (3417); James River Coal Service Co. (2577); Lames River Escrow Inc. (0314); Jellico Mining, LLC (4545); Johns Creek Coal Co. (9412); Johns Creek Elkhorn Coal Corp. (9199); Johns Creek Processing Co. (4021); Laurel Mountain Resources LLC (1458); Leeco, Inc. (4176); Logan & Kanawha Coal Co., LLC (5716); McCoy Elkhorn Coal Corp. (8373); Rockhouse Creek Development, LLC (9583); Shamrock Coal Co., Inc. (1843); Snap Creek Mining, LLC (6858); Triad Mining Inc. (9005); Triad Underground Mining, LLC (9041).

imposed by 11 U.S.C. § 362 in order to offset tax refunds that Mine Service currently holds on behalf of the Debtors.[2]

The Motion asks the Court to determine whether Mine Service holds certain tax refunds it received postpetition from the Commonwealth of Kentucky on behalf of the Debtors in its "individual capacity" or as an agent for the Commonwealth of Kentucky. If the Court finds that Mine Service is holding the tax refunds in its individual capacity, then it argues that mutuality is satisfied and Mine Service should be permitted to effect an offset. If, on the contrary, Mine Service is merely serving as a conduit for the Commonwealth of Kentucky, then the Debtors argue that the mutuality requirement is not satisfied and Mine Service should be required to remit the tax refunds to the Debtors.

The Court took the matter under advisement at the conclusion of the Hearing. After considering the applicable statutory authority, case law, pleadings, and arguments, the Court finds that Mine Service's Motion should be denied. This memorandum opinion sets forth the Court's analysis and conclusions that support this ruling in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.[3]

**Jurisdiction and Venue**

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for

---

[2] The stay automatically imposed under 11 U.S.C § 362 upon commencement of a bankruptcy case gives the debtor an immediate breathing spell, protecting the debtor from all collection efforts of its creditors. *See* H.R. Rep. No. 595, 96th Cong., 1st Sess. 340, *reprinted* in 1978 U.S.C.C.A.N. 5963, 629697. This relief includes a prohibition against "the setoff of any debt owing to the debtor that arose before the commencement of the case [under the Bankruptcy Code] against any claim against the debtor." 11 U.S.C. § 362(a)(7). On request of a party in interest the Court may grant relief by terminating, annulling, modifying, or conditioning the stay. *Id.* § 362(d).

[3] Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that Rule 7052 is applicable to this contested matter. *See* Fed R. Bankr. P. 9014(c). Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed R. Bankr. P. 7052.

2

the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

## Factual and Procedural Background

The parties entered into a joint stipulation of fact regarding the Motion prior to the Hearing, upon which the Court largely bases its findings of fact. On April 7, 2014, the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Petition Date").[4] Prior to the Petition Date, Mine Service sold goods to several of the Debtors for use in the Debtors' coal mining operations. Mine Service and the Debtors transacted business in Kentucky. Kentucky statutory tax law requires a vendor engaged in a sales transaction to collect applicable sales tax from its purchaser and to hold the tax collected in trust on account of the Commonwealth of Kentucky. Ky. Rev. Stat. Ann. § 139.210(1), (3).

Over the course of the parties' dealings, after selling goods to one of the Debtors, Mine Service would collect the applicable sales tax in connection with a sale transaction upon payment of its invoice. Mine Service would then pay the sales tax it had collected from the Debtors to the Kentucky Department of Revenue (the "Department of Revenue"). On some occasions Mine Service paid the Department of Revenue the amount of the applicable sales tax in advance of actually collecting the sales tax from the Debtors due to the parties' billing cycles. In these instances, Mine Service would reimburse itself for the tax payment it had advanced when it collected its invoice. If Mine Service were to have paid the Department of Revenue sales tax in advance of collecting the same from one of its vendors and if that vendor subsequently defaulted on the payment of the invoice submitted by Mine Service, then Mine Service would become

---

[4] All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq.*

3

eligible under Kentucky law to obtain a refund in its own right from the Department of Revenue. Ky. Rev. Stat. Ann. § 139.350.[5]

Occasionally, the amount Mine Service collected from the Debtors included tax on transactions that the Debtors ultimately determined to be exempt from Kentucky's sales tax. Once such a determination was made, the Debtors would request Mine Service to submit a Sales and Use Tax Refund Application ("Form S1A209") to the Kentucky Revenue Cabinet so the Debtors could receive a refund of the taxes they had overpaid. The Debtors sent a number of postpetition requests for tax refunds to Mine Service who in turn filed the requests with Department of Revenue. When Mine Service received the tax refund, Mine Service was supposed to remit the funds to the Debtors.

The parties agree that since the Petition Date, Mine Service has received a number of sales tax refunds totaling approximately $112,735.02. Mine Service is holding the tax refunds in a separate bank account. The parties anticipate the receipt of additional sales tax refunds. Mine Service has filed four proofs of claim in this case totaling $646,506.39, which represents the amount it was owed by the Debtors on account of unpaid invoices for goods sold to the Debtors prepetition. None of the disputed sale tax refunds relate to this prepetition debt. Mine Service has filed this Motion to obtain relief from the automatic stay so that it may setoff the sales tax refunds it is holding and owes to the Debtors against the prepetition claims the Debtors owe Mine Service.

**Analysis**

Bankruptcy Code § 553 recognizes and preserves the right of a creditor "to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the

---

[5] These are not the facts presented, however, in the case at bar.

commencement of the case. . . ." 11 U.S.C. § 553(a). Section 553 is subject to a number of limitations, none of which are applicable here. *See id.* § 553(a)(1)–(3), (b). For the right of setoff to be valid, the creditor must establish: "(1) that the creditor holds a 'claim' against the debtor that arose prepetition; (2) that the creditor owes a 'debt' to the debtor that also arose prepetition; (3) that the claim and the debt are mutual; and (4) that the claim and the debt are each valid and enforceable." *King v. Fulbright & Jaworski, LLP (In re Koch)*, 224 B.R. 572, 576 (Bankr. E.D. Va. 1998). The crux of this case lies, first, with the mutuality requirement and, second, with the timing requirement for the origination of the offsetting obligations. The elements necessary to establish the right of setoff are strictly construed against the party seeking to assert the right.

The Bankruptcy Code does not define "mutuality." Courts have generally found that "mutuality requires that the debts be owed between the same parties acting in the same capacity but not necessarily of the same character." *Id.* (citing *Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.)*, 98 B.R. 243, 248 (Bankr. E.D. Va. 1989)). Stated otherwise, the debts must be between the same parties, the parties must stand in the same right, and the parties must act in the same capacity. *See In re Semcrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009). Here, the Debtors contend that Mine Service is holding the tax refunds for the benefit of the Debtors as a conduit for the Commonwealth of Kentucky. Therefore, the Debtors argue, mutuality is destroyed.

Kentucky Revised Statute ("KRS") section 139.200 imposes a six percent sales tax on "the gross receipts derived from: (1) Retail sales of: (a) Tangible personal property, regardless of the method of delivery, made within this Commonwealth." Ky. Rev. Stat. Ann. § 139.200. KRS section 139.210(3) provides that "[t]he taxes collected under this section shall be deemed to be

5

held in trust by the retailer for and on account of the Commonwealth." Subsection (4) of that section provides that "[t]he taxes to be collected under this section shall constitute a debt of the retailer to the Commonwealth." *Id.* § 139.210. KRS section 139.340 outlines the retailer's duty to collect the sales tax paid by the purchaser, and similarly provides that the funds so collected are to be held in trust on account of the Commonwealth of Kentucky. *Id.* § 139.340. KRS section 134.580 specifies the process by which refunds can be obtained, and section 139.770 governs refunds of taxes paid. *Id.* §§ 134.580, 139.770. Under Kentucky law,

> No taxpayer or certified service provider as provided by KRS 139.795 shall be entitled to a refund or credit of the taxes paid pursuant to the provisions of this chapter where the taxes have been collected from a purchaser as provided by KRS 139.210 and 139.340, unless the amount of taxes collected from the purchaser are refunded to the purchaser by the taxpayer or certified service provider as provided by KRS 139.795 who paid the taxes to the State Treasury.

*Id.* § 139.770(3).

Mine Service argues that mutuality does exist because Mine Service is a retailer, and the retailer is technically defined as the taxpayer under KRS 139.210, even though the retailer is obligated to add the tax to the purchase price and collect the tax from the purchaser. *Id.* § 139.210. If a purchaser believes that one of its sales transactions with a retailer is exempt, then the purchaser must provide the retailer with a valid exemption certificate. It is the retailer that must submit the request for refund in its own name to seek repayment of the tax. Refunds are made to the retailer, who was the original taxpayer. Mine Service then becomes obligated to remit the refund to the Debtors. Mine Service concludes that setoff is appropriate as the Debtors owe Mine Service a debt arising from open accounts for prepetition sales, which is counterbalanced by a debt Mine Service owes the Debtors in the form of state tax refunds. Mine Service argues that neither debt is owed in any capacity other than that of the debtor creditor relationship. Therefore, Mine Service posits that the mutuality requirement is satisfied.

6

In this instance, the Court finds *BEA Systems Inc. v. Shubert (In re Winstar Commc'ns, Inc.)*, 315 B.R. 660 (D. Del. 2004) to be instructive. In that case, BEA Systems, Inc. sought relief from the automatic stay in order to setoff sales tax refunds that BEA had received from the Commonwealth of Virginia and owed to the debtors in that case, against the debtors' prepetition debt owed to BEA. *Id.* at 661–62. BEA had collected slightly over $350,000 in sales taxes from the debtors, even though the debtors were exempt from Virginia sales tax. *Id.* at 661. BEA filed an amended tax return and received the refund, plus interest. BEA contended that it had the option to either refund the sales tax or to credit the refund to the debtors' account. Therefore, BEA was holding the funds in its individual capacity. *Id.* at 661–62. The United States District Court for the District of Delaware affirmed the bankruptcy court in finding that BEA received the tax refund in an agency capacity, and not in its individual capacity. *Id.* at 663. The district court found it significant that the Virginia statute declares that "all sums collected by a dealer . . . shall be deemed to be held in trust for the Commonwealth." *Id.* at 663 (citing Va. Code Ann. § 58.1-625). Additionally, the court found it noteworthy that other provisions in the Virginia Code and Administrative Rulings demonstrate "the vendor is merely a conduit or agent of the state through which the refund passes to the customer." *Id.* As further evidence that mutuality was lacking, the court recognized that BEA would not have been entitled to a refund unless the debtors provided a certificate of tax exemption and a writing indicating its "willingness to await payment of the refund from the vendor until the refund is issued by Virginia." *Id.* at 662. The court eventually determined that BEA was acting as an agent for both Virginia and the debtors, and therefore mutuality did not exist. *Id.* at 663.

Mine Service argues that *Winstar* is inapplicable to the case at bar because *Winstar* relied on Virginia law, which is distinguishable from Kentucky law. In Virginia, sales tax is levied on

7

the purchaser, while in Kentucky, the sales tax is levied on the retailer. Mine Service proceeds to argue that under Kentucky law only the retailer, and not the purchaser, can seek a refund. Tax refund Form S1A209 states "only the person making payment of the tax directly to the Kentucky State Treasury may file the application for refund." A certification must also be made that the applicant does not owe any liability to Kentucky. Mine Service looks to KRS section 44.030 for additional support, which states "[n]o money shall be paid to any person on a claim against the state in his or her own right, or as an assignee of another, when the person or the person's assignor is indebted to the state or any local government." Ky. Rev. Stat. Ann. § 44.030. Mine Service argues that this statutory framework does not create an agency relationship and therefore Mine Service has satisfied the mutuality requirement.

While Mine Service forwards an intriguing argument, the Court finds that the mutuality obligation has not been satisfied. Many of Virginia's statutory provisions are similar to those in Kentucky. For example, both states provide that the tax collected by the vendor must be held in trust for the benefit of the Commonwealth. *Compare* Ky. Rev. Stat. Ann. §§ 139.210, .340, *with* Va. Code Ann. § 58.1-625. The Debtors have the ultimate obligation to pay the sales tax.[6] The Debtors pay the sales tax to Mine Service, which in turns holds that money in trust for Department of Revenue. Once the Department of Revenue decides to issue a refund, Mine Service has an obligation to the Debtor to return the amount of tax refunded. Kentucky contemplates this scheme through KRS section 139.770.[7] The Commonwealth of Kentucky would not have paid the refund to Mine Service in the first place if Mine Service did not have a

---

[6] Unlike under Virginia law, the Movant in this case is defined under Kentucky law as the taxpayer. However, the ultimate payment obligation rests on the shoulders of the purchaser.

[7] That section provides in pertinent part: "No taxpayer . . . shall be entitled to a refund . . . of the taxes paid . . . where the taxes have been collected from a purchaser . . . unless the amount of taxes collected from the purchaser are refunded to the purchaser by the taxpayer. . . ." KRS § 139.770(3).

8

corresponding duty to remit payment to the Debtors. Instruction four from Form S1A209 is entirely consistent. It provides "[n]o taxpayer will be issued a refund or credit for sales or use tax where the tax has been collected from a purchaser as provided by KRS 139.210 and 139.340, unless the amount of tax collected from the purchaser is refunded to him by the taxpayer who paid the tax to the state." Additionally, Mine Service could not submit the tax refund request on its own accord. Rather, it could only submit such a request for refund following action by the Debtors. These facts all support the conclusion that Mine Service is acting as a conduit between the Debtors and the Commonwealth of Kentucky.[8] Therefore, the Court concludes that the mutuality requirement has not been satisfied, and Mine Service may not setoff its claims against the Debtors that arise out of the sales tax reimbursements.

But even if the Court were to have concluded otherwise, it would still be compelled to deny Mine Service's Motion for Relief. The obligations that the parties owed to each other (in whatever capacity they may have been held) arose on opposite sides of the Petition Date. Any obligation Mine Service had to remit sales taxes it received from the Commonwealth of Kentucky to the Debtors was created by KRS section 139.770. That obligation did not arise until Mine Service actually received the tax refund from the Commonwealth of Kentucky. Both the application for the refund and the payment of the refund occurred postpetition. Mine Service is seeking to setoff $112,753.02 in tax refunds it acquired after the petition date against the prepetition claims it has against the Debtors. Mine Service is attempting to setoff a prepetition debt against a postpetition debt. The mutuality requirement notwithstanding, the first two elements necessary to effect a setoff remain unsatisfied. *See In re Koch*, 224 B.R. at 576.

---

[8] Mine Service advances the argument that the tax refund is not subject to any express or implied trust, noting that there is no reported precedent to support this assertion. Movant attempts to draw an analogy with the structure of Kentucky mechanics' lien law. However, here there is an independent statutory obligation that is far different from that applicable to mechanics' liens. Accordingly, the Court does not find this line of reasoning persuasive.

9

**Conclusion**

After examination of the applicable statutory authority, case law, pleadings, and arguments, the Court finds that: (i) Mine Service is acting as a mere conduit between the Commonwealth of Kentucky and the Debtors and (ii) Mine Service is attempting to setoff a prepetition debt against a postpetition obligation. Accordingly, Mine Service has failed to satisfy the requirements necessary to effect a right of setoff under Bankruptcy Code § 553. Therefore, the Motion of Mine Service for Relief from the Automatic Stay will be denied. Mine Service is not entitled to setoff the tax refunds.

A separate order shall issue.

ENTERED: _____July 16, 2015_____

                                                   /s/Kevin R. Huennekens
                                     UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: July 16, 2015